UNITED STATES DISTRICT COURT
DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

    Plaintiff,

v.                                                                 No. 1:18-cr-01966-JCH

NICK L. MEDEIROS and
BOBBY GREAVES,

    Defendants.

**MEMORANDUM OPINION AND ORDER**

This matter is before the Court on Nick L. Medeiros's and Bobby Greaves's (Defendants) Motions for Production of Evidence Favorable to the Accused (ECF No. 73) and Disclosure of Grand Jury Testimony (ECF No. 75).

**I.  BACKGROUND**

Defendants are accused in a superseding indictment of defrauding, conspiring to defraud, and making false statements to federal agencies by abusing the Service-Disabled Veteran-Owned Small Business Program (SDVOSB), which provides federal contracting assistance to service-disabled veterans who own small business. Defendants allegedly "misrepresented the relationship between their small business" – JSR, Inc. and NJM, Inc. – "in order to obtain and maintain certain federal contracts." ECF No. 78, 2. Mr. Medeiros's business, NJM, allegedly exploited its SDVOSB-status to obtain federal contracts for work that JSR then performed, despite its lack of SDVOSB-status. ECF No. 77, 2.

On March 20, 2020, Defendants filed a *Brady*[1] motion, claiming that two subsequent litigation events lead them to believe that the Government may not have turned over all *Brady* material.

First, Defendants claim that during their inspection of documents related to two federal contracts for work at Cannon Air Force Base, Defendants found a favorable Air Force internal memorandum (memo) that the Government did not disclose in discovery. The memo said that NJM was a newly formed SDVOSB with "no history in its own right" and "had partnered with JSR, a firm well known to Cannon AFB, which provides a reasonable measure of confidence for performance on this contract." ECF No. 73 at 2. This memo was issued before Defendants received the work contract and Defendants claim that the memo is favorable evidence that the Government did not disclose.

Second, Defendants requested the file for NJM from the Center for Veterans Enterprise (CVE), the agency that manages the SDVOSB program. During their inspection of the CVE file for NJM, Defendants discovered that after a February 2016 anonymous tip leading to the charges in this case, CVE investigated the facts in the tip and determined that no further action was required. Again, this CVE file was not disclosed by the Government.

Defendants are now concerned that possibly more favorable documents exist that the Government has not provided to Defendants. They therefore move to compel disclosure of 14 types of discovery depending on the phase of the criminal proceedings – pre-trial, trial, and after the Government rests its case.

On March 20, Defendants also moved for an order compelling the Government to disclose the grand jury testimony of all testifying witnesses or, alternatively, for the Court to

---

[1] *Brady v. Maryland,* 373 U.S. 83, 83 (1963).

review the testimony, *in camera*, of certain witness. Defendants seek disclosure of the transcripts pursuant to Federal Rule of Criminal Procedure 6(e)'s exceptions for disclosure of grand jury matter "preliminarily to or in connection with a judicial proceeding," or where "a defendant who shows that a ground may exist to dismiss the indictment because of a matter that occurred before the grand jury." Fed. R. Crim. P. 6(e)(3)(E)(i), (ii).

## II. DEFENDANTS' MOTION FOR PRODUCTION OF EVIDENCE FAVORABLE TO THE ACCUSED (ECF NO. 73)

### A. Law Governing Discovery in Criminal Cases

Federal prosecutors' "duty to disclose in criminal cases arises from at least three sources: (i) rule 16 of the Federal Rules of Criminal Procedure; (ii) the Due Process Clause of the Fifth Amendment; and (iii) the Jencks Act." *United States v. Baca*, No. CR 16-1613 JB, 2019 WL 2649835, at *34 (D.N.M. June 27, 2019).

#### 1) Federal Rule of Criminal Procedure 16

Subpart 16(a)(1)(E) or Fed. R. Crim. P. 16 sets forth the types of the information the government must disclose to the defendant upon his request:

> books, papers, documents, data, photographs, tangible objects, buildings or places, or copies or portions of any of these items, if the item is within the government's possession, custody, or control and:
> (i) the item is material to preparing the defense;
> (ii) the government intends to use the item in its case-in-chief at trial; or
> (iii) the item was obtained from or belongs to the defendant.

Fed. R. Crim. P. 16(a)(1)(E).

A defendant must make a *prima facie* showing of materiality before he is entitled to obtain requested discovery. *See United States v. Simpson*, 845 F.3d 1039, 1056 (10th Cir. 2017). "Neither a general description of the information sought nor conclusory allegations of materiality suffice; a defendant must present facts which would tend to show that the government is in

3

possession of information helpful to the defense." *United States v. Lucas*, 841 F.3d 796, 804 (9th Cir. 2016). The term "defense" means an argument in response to the prosecution's case-in-chief, *i.e.*, an argument that refutes the government's claims that the defendant committed the crime charged. *See United States v. Armstrong*, 517 U.S. 456, 462 (1996). To be material, it is not enough that the evidence sought "bears some abstract, logical relationship to the issues in the case … [r]ather a showing of materiality requires some indication that pretrial disclosure of the information sought would have enabled the defendant to significantly alter the quantum of proof in his favor." *United States v. Goris*, 876 F.3d 40, 44-45 (1st Cir. 2017). Establishing *prima facie* materiality is not a heavy burden; evidence is material when there is a strong indication that it "will play an important role in uncovering admissible evidence, aiding witness preparation, corroborating testimony, or assisting impeachment or rebuttal." *United States v. Lloyd*, 992 F.2d 348, 351 (D.C. Cir. 1993) (internal quotations omitted). Nonetheless, the threshold showing of materiality is essential because ordering the government to produce discovery absent such a showing is inconsistent with Rule 16. *See United States v. Mandel*, 914 F.2d 1215, 1219 (9th Cir. 1990).

The scope of discoverable materials is limited by Rule 16(a)(2), which states in pertinent part, "this rule does not authorize the discovery or inspection of reports, memoranda, or other internal government documents made by an attorney for the government or other government agent in connection with investigating or prosecuting the case." Fed. R. Crim. P. 16(a)(2).

"At any time the court may, for good cause, deny, restrict, or defer discovery or inspection, or grant other appropriate relief." Fed. R. Crim. P. 16(d). Moreover, a "trial court can and should, where appropriate, place a defendant and his counsel under enforceable orders against unwarranted disclosure of the materials which they may be entitled to inspect." *Alderman*

*v. United States,* 394 U.S. 165, 185 (1969). "The burden of showing 'good cause' is on the party seeking the order, and 'among the considerations to be taken into account by the court will be the safety of witnesses and others, a particular danger of perjury or witness intimidation, [and] the protection of information vital to national security[.]'" *United States v. Cordova*, 806 F.3d 1085, 1090 (D.C. Cir. 2015) (quoting Fed. R. Crim. P. 16(d) Advisory Committee's Note to 1966 Amendment to Former Subdivision (e)).

### 2) *Brady* and *Giglio*

In *Brady v. Maryland,* 373 U.S. 83 (1963), the Supreme Court held that "suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *Id.* at 87. The Supreme Court recognized the obligation to disclose even in the absence of a defense request. *United States v. Agurs,* 427 U.S. 97, 107 (1976). Further, in *Giglio v. United States,* 405 U.S. 150, 154 (1972), the Supreme Court extended the prosecution's *Brady* obligation to include the disclosure of evidence affecting the credibility of a witness. Such information and evidence is "material" under *Brady* "if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *Kyles v. Whitley,* 514 U.S. 419, 433 (1995) (quoting *United States v. Bagley,* 473 U.S. 667, 682, 105 S.Ct. 3375, 87 L.Ed.2d 481 (1985) (opinion of Blackmun, J.)). The Supreme Court continues to reaffirm that prosecutors have an "affirmative duty to disclose evidence favorable to a defendant," *Kyles,* 514 U.S. at 432, and that "the prudent prosecutor will resolve doubtful questions in favor of disclosure." *Agurs,* 427 U.S. at 108, *Kyles,* 514 U.S. at 439.

### 3) The Jencks Act

Fed. R. Crim. P. 16(a)(2) likewise "prohibits discovery of statements by government witnesses or prospective government witnesses except as provided in the Jencks Act, 18 U.S.C. § 3500." *United States v. Tarantino*, 846 F.2d 1384, 1414 (D.C. Cir. 1988). "The Jencks Act entitles a federal criminal defendant to obtain any pretrial statement and report made by a government witness, but only *after* the witness has testified on direct examination at trial." *United States v. Nevels,* 490 F.3d 800, 803 (10th Cir. 2007) (emphasis in original). The purpose of the Jencks Act is to protect the prosecution's files from unwarranted disclosure and to allow defendants materials usable for the purposes of impeachment. *See United States v. Smaldone*, 544 F.2d 456, 460 (10th Cir. 1976). "The prosecution … must disclose [statements] under the Jencks Act[] … in a manner allowing the defense a reasonable opportunity to examine it and prepare for its use in the trial." *United States v. Celis*, 608 F.3d 818, 835 (D.C. Cir. 2010) (internal quotations and citations omitted).

### B. Discussion

Defendants move to compel disclosure of 14 types of discovery depending on the phase of the criminal proceedings – pre-trial, trial, and after the Government rests its case. The Court rules on those 14 requests as follows.

#### 1) **Defendants' Requested Material Described in I(A)(2)-(3), II(3), III(A)(1) and (A)(3) is Denied**

Defendants' request for material described in subparts I(A)(2)-(3), II(3), III(A)(1) and (A)(3) is denied. Concerning the requests made in I(A)(2)-(3) and II(3), the Government says that the requested material does not exist. Because "[i]t is well settled that there is no affirmative duty upon the government to take action to discover information which it does not possess,"

*United States v. Tierney*, 947 F.2d 854, 864 (8th Cir. 1991), the Court denies that portion of Defendants' motion.

Defendants' requests for material made in III(A)(1) (grand jury testimony by prosecution witnesses), and III(A)(3) (statements or reports by trial witnesses for the Government) are also denied. In its response brief, the Government says that intends to turn over the requested items as Jencks Act or *Giglio* material and therefore the Defendants' requests are denied.

### 2) Pretrial Disclosure Requests (Section I)

#### a) Known Favorable Evidence

In subpart I(A)(1) of their motion, Defendants move to compel disclosure of "the names and addresses of all persons who have, or may have, information which is favorable to the Defendants, or which is inconsistent, in any material way, with the government's theory of the case." To the extent that Defendants seek pretrial disclosure of the prosecution's witnesses, Defendants' request is denied because in a non-capital case a criminal defendant has no generalized right to discover the identities of prospective government witnesses. *See Weatherford v. Bursey,* 429 U.S. 545, 559 (1977). To the extent that Defendants seek production of *Giglio* evidence, this Court's standing discovery order already requires the disclosure of *Brady* and *Giglio* material, and thus, a separate order compelling the disclosure of any evidence subject to *Giglio* is not necessary.

#### b) Non-Testifying Witness Evidence

In subpart I(B)(1), Defendants request pretrial disclosure of the names and addresses of non-testifying witnesses interviewed by the Government. "While courts may in their discretion order the Government to produce such a list of witnesses, *United States v. Hsin-Yung*, 97 F. Supp. 2d 24, 36 (D.D.C. 2000) (citing *United States v. Cadet,* 727 F.2d 1453 (9th Cir. 1984)),

there must be a showing of materiality before requiring the disclosure of information regarding non-testifying witnesses. *See United States v. Lujan*, 530 F. Supp. 2d 1224, 1249–50 (D.N.M. 2008). Here, Defendants provided no reason for needing this information, and they did not "assert that the witnesses have exculpatory information, which would require that the list be produced under the *Brady* doctrine." *Hsin-Yung*, 97 F. Supp. 2d 24 at 36. Accordingly, Defendants' request is denied.

In addition to the names and addresses of non-testifying witnesses, in subparts I(B)(2) and (3), Defendants request any written or recorded statement made by such witnesses and reports – including law enforcement reports – that contain a verbatim account of any oral statement made by any non-testifying witnesses. "Criminal defendants are only entitled to statements of non-testifying witnesses … if those statements qualify as *Brady* material." *United States v. Edelin*, 128 F. Supp. 2d 23, 33 (D.D.C. 2001) (citing *United States v. Williams–Davis,* 90 F.3d 490, 512–12 (D.C. Cir. 1996)). Defendants' stated need for the statements of non-testifying witnesses is that they are "necessary so that Defendants' counsel may effectively assist [Defendants] at trial." But Defendants point to no particularized need for the statements or explain whether they qualify as *Brady* material. Accordingly, their requests are denied.

### 3) Trial Disclosure Requests (Section II)

#### a) Evidence Affecting a Testifying Witness's Credibility

In subpart II(1), Defendants request "all written or recorded statements or reports previously made by any person other than the witness which contradict, in a material way, the witness on any portion of his direct testimony or which attributes to the witness any statement which is inconsistent with any testimony given by the witness on direct examination." In other words, Defendants move to produce *Giglio* evidence. As explained *supra*, the Court's standing

8

discovery order already requires the disclosure of *Giglio* material and thus a separate order compelling the disclosure of any evidence is unnecessary.

### b) FBI "Rap Sheet" or Documents of Testifying Witness's Prior Criminal History

In subpart II(2), Defendants move to compel disclosure at trial "any FBI Identification Sheet or any other document or writing … showing all prior arrests and convictions of the [testifying] witness." "[T]he prosecution bears the burden of disclosing to the defense a prosecution witness's criminal record, whether or not an explicit request has been made by defense counsel." *Wilson v. Beard*, 589 F.3d 651, 663 (3d Cir. 2009); *East v. Scott*, 55 F.3d 996, 1003 (5th Cir. 1995) ("the prosecution is deemed to have knowledge of any criminal history information pertaining to its witnesses that would be revealed by a routine check of FBI and state crime databases, including a witness' state 'rap sheet.'") (discussing *United States v. Auten,* 632 F.2d 478, 480 (5th Cir.1980)). Therefore, Defendants' request for disclosure at trial of the criminal records of each witness the Government intends to call is granted.

### 4) Disclosures after the Government Rests (Section III)

### a) Grand Jury Testimony of Witnesses who the Government Will Not Call at Trial

In subpart III(A)(1), Defendants seek, "the entire grand jury testimony of each person who appeared before the grand jury … but who did not testify for the government in its case-in-chief." Because Defendants point to no particularized need for the grand jury testimony of non-testifying witnesses or explain whether such testimony qualifies as *Brady* material, their request is denied. *See Edelin*, 128 F. Supp. 2d 23 at 33 ("Criminal defendants are only entitled to statements of non-testifying witnesses … if those statements qualify as *Brady* material.")

9

### b) Statements of Non-Testifying Witnesses who were Interviewed by the Government

In subpart III(A)(4), Defendants move to compel disclosure of "[a]ll written or recorded statements by persons who were interviewed by the government … but who were not called as witnesses" in the Government's case-in-chief. Again, absent a showing of particularized need for this discovery and a showing that it qualifies as *Brady* material, Defendants motion is denied.

### c) Records Prepared by Non-Testifying Investigative or Law Enforcement Personnel

Finally, in subpart III(A)(5), the Defendants move to compel disclosure of "[a]ll … recordings which have not been otherwise produced for the Defendants' inspection, which were prepared, in connection with the investigation of this case, by investigative or law enforcement officers … who did not testify," after the Government presents its case-in-chief. This request is denied for the reasons articulated above.

## III. DEFENDANTS' MOTION FOR DISCLOSURE OF GRAND JURY TESTIMONY (ECF NO. 75)

Defendants move for an order compelling the Government "to disclose the grand jury testimony of any and all witnesses who testified before the grand jury" or for the Court to review the testimony, *in camera*, of certain witness whom Defendants believe may have testified before the grand jury. Defendants make three arguments. First, they believe that "the full scope of [their] involvement was not adequately presented to the grand jury," and suggest that the prosecution did not present evidence that negated Defendants' guilt. Second, they contend that if this case's special case agent was the sole testifying witness before the grand jury, then he or she may have presented the grand jury with "excessive or improper" hearsay, which undermined the

10

proceedings. Third, the transcripts are needed to prepare a defense and properly cross-examine and impeach witnesses. Defendants seek disclosure of the transcripts pursuant to Federal Rule of Criminal Procedure 6(e)'s exceptions for disclosure of grand jury matter "preliminarily to or in connection with a judicial proceeding," or where "a defendant who shows that a ground may exist to dismiss the indictment because of a matter that occurred before the grand jury." Fed. R. Crim. P. 6(e)(3)(E)(i), (ii).

The Government opposes the motion but represents that it will provide Defendants relevant factual statements from the grand jury proceeding as part of its binding discovery obligations.

**A. Legal Standard**

A "grand jury proceeding is accorded a presumption of regularity, which generally may be dispelled only upon particularized proof of irregularities in the grand jury process." *United States v. R. Enters., Inc.*, 498 U.S. 292, 301 (1991) (internal quotation omitted). The Supreme Court has recognized "'that the proper functioning of our grand jury system depends upon the secrecy of grand jury proceedings.'" *In re Special Grand Jury 89-2*, 143 F.3d 565, 569 (10th Cir. 1998) (quoting *Douglas Oil Co. v. Petrol Stops Northwest*, 441 U.S. 211, 218 (1979)). "Secrecy, however, is not absolute," as demonstrated by Federal Rule of Criminal Procedure 6(e), which provides exceptions to the general rule. *Id*.

Disclosure of grand jury information is proper under Rule 6(e)(3)(E)(i) when three requirements are satisfied. The person seeking disclosure must first identify a relevant "judicial proceeding"; then, second, establish that the requested disclosure is "preliminarily to" or "in connection with" that proceeding; and, finally, show a "particularized need" for the requested grand jury materials. *See United States v. Sells Eng'g, Inc.*, 463 U.S. 418, 443 (1983).

Concerning disclosure under Rule 6(e)(3)(E)(ii), the decision on whether to disclose grand jury materials to defendant's counsel is left to the trial court on a showing by defendant "that a ground may exist to dismiss the indictment because of a matter that occurred before the grand jury." In considering the issue of grand jury disclosure, the Tenth Circuit has stated:

> [t]he prerequisites for disclosure of grand jury materials are demanding. Specifically, a party seeking grand jury materials must show (1) the materials are needed to avoid a possible injustice in another judicial proceeding, (2) the need for disclosure is greater than the need for continued secrecy, and (3) the request is structured to cover only material so needed. Relevance alone is not sufficient; secrecy will not be broken absent a compelling necessity for the materials. Further, the request must amount to more than a request for authorization to engage in a fishing expedition.

*In re Grand Jury 95-1*, 118 F.3d at 1437 (quotation marks and citations omitted). Rather than a general request, the Supreme Court has consistently held a defendant must make a strong showing of a "particularized need" before grand jury materials are disclosed. *See United States v. Warren*, 747 F.2d 1339, 1347 (10th Cir. 1984) (quotation marks and citations omitted). It appears that this same standard applies to requests for *in camera* review of the grand jury material. *See United States v. Dzionara-Norsen*, No. 19-CR-6131G, 2020 WL 1897179, at *13 (W.D.N.Y. Apr. 17, 2020). In sum, "[t]he rule governing disclosure of grand jury testimony is not to be used as a substitute for general discovery," *In re Lynde*, 922 F.2d 1448, 1453-54 (10th Cir. 1991) (quotation marks and citation omitted), nor as a means to reveal exculpatory evidence, *see United States v. Rising*, 867 F.2d 1255, 1260 (10th Cir. 1989).

**B. Discussion**

Because under either of Rule 6's exceptions Defendants must show a "particularized need" for the transcripts, the Court concentrates on that component and concludes that Defendants have failed to show such a need. Defendants' arguments that the prosecution did not present evidence negating their guilt and that the grand jury heard solely from a case agent who

parroted hearsay is based on nothing more than speculation. While the Court sympathizes with Defendants' claim that without the transcripts they cannot determine if their constitutional rights were violated, their conjectural beliefs are insufficient to establish a need for disclosure that outweighs the policy of grand jury secrecy. Accordingly, the Defendants' motion is denied.

## IV.   CONCLUSION

**IT IS THEREFORE ORDERED that**

- Defendants' Motion for Production of Evidence Favorable to the Accused **(ECF No. 73)** is **GRANTED in part and DENIED in part** as explained herein;

- Defendants' Motion for Disclosure of Grand Jury Testimony **(ECF No. 75)** is **DENIED**;

- The Clerk of Court is directed to seal the Government's entire filing at ECF No. 76. In that filing, the Government attached to and quoted from a sealed order of this Court from an unrelated case, thereby making the sealed order public. **The United States Attorney's Office is kindly asked to ensure that it does not place onto the public record this Court's sealed orders**.

**IT IS SO ORDERED**.

_____
HON. JUDITH C. HERRERA
Senior United States District Judge