**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW MEXICO**

UNITED STATES OF AMERICA,

Plaintiff,

v. No. 1:18-cr-01966-JCH

NICK L. MEDEIROS and
BOBBY GREAVES,

Defendants.

**MEMORANDUM OPINION AND ORDER**

Defendants are accused in a superseding indictment of defrauding, conspiring to defraud, and making false statements to federal agencies by abusing the Service-Disabled Veteran-Owned Small Business Program (SDVOSB), which provides federal contracting assistance to service-disabled veterans who own small business. The Government filed the following three pretrial motions: "Motion *in Limine* to Exclude Non-Relevant Evidence" (ECF No. 41), "Motion *in Limine* Regarding Possible Penalties" (ECF No. 42), and "Motion for Court to Inspect any Joint Defense Agreement *in Camera*" (ECF No. 43). After careful consideration of the motions, briefs, and relevant law, the Court rules as explained herein.

## I. DISCUSSION

### A. Motion for the Court to Inspect any Joint Defense Agreement *in Camera*

The Government has moved the Court to conduct an *in camera* inspection of "any joint defense agreement [JDA]entered into by the defendants in this case." ECF No. 43 at 1. If any such joint defense agreement exists, the Government asks the Court to ensure that the JDA is "(1) [] in writing and signed by all participating defendants and defense counsel; (2) contain[s]

language that ensures that the agreement does not create (or ensures that it waives) any fiduciary duty, duty of loyalty, confidentiality obligation, or attorney-client privilege between any defendant and any attorney who is not his or her court-appointed counsel; and (3) provide[s] a mechanism for withdrawal from the agreement." *Id*.

Citing the district court's opinion in *United States v. Stepney*, 246 F. Supp. 2d 1069 (N.D. Cal. 2003), the Government emphasizes "catastrophic," *id*. at 6, possible consequences if the Court declines to use its supervisory power to review the JDA for actual or potential conflicts of interest among or between counsel and their clients. First, the Government makes a conflict of interest argument. If one defendant pleads guilty and cooperates with the Government, defense counsel for the non-cooperating defendant will be precluded from cross-examining the former codefendant because he or she obtained confidential information from the cooperator through the JDA. Therefore, the Government asks the Court to ensure that the JDA, if it exists, contains a conditional waiver of confidentiality for the cooperating defendant that allows the cross-examining attorney to use privileged information, free from any conflicts of interest. Moreover, the Government believes that the JDA must explicitly allow withdrawal upon notice to the other defendants and insists that it contain other features discussed in *Stepney*.

Defendants filed no response stating their position on the record and the time to do so has passed under D.N.M.LR-Cr. 47.8(a). Therefore, it is unclear whether a JDA even exists or whether it includes the terms that the Government wants the Court to review *in camera*.

"[T]he Sixth Amendment right to have the effective assistance of counsel encompasses the right to have counsel untainted by conflicts of interest." *United States v. Almeida*, 341 F.3d 1318, 1323 (11th Cir. 2003) (citing *Holloway v. Arkansas*, 435 U.S. 475 (1978) and *Cuyler v. Sullivan*, 446 U.S. 335 (1980)). "When co-defendants enter into a joint defense agreement, …

each defendant retains his own attorney," and "confidential communications made during joint defense strategy sessions are privileged." *Almeida*, 341 F.3d at 1323 (citing *Wilson P. Abraham Const. Corp. v. Armco Steel Corp.*, 559 F.2d 250, 253 (5th Cir.1977) and *United States v. Schwimmer*, 892 F.2d 237, 243 (2d Cir.1989)). "A joint defense agreement does not create an attorney-client relationship between an attorney and the co-defendant." *United States v. Exec. Recycling, Inc.*, 908 F. Supp. 2d 1156, 1159–60 (D. Colo. 2012) (citing *Stepney*, 246 F. Supp. 2d at 1080). "Thus, an attorney owes no duty of loyalty to her client's co-defendant." *Id*. at 1160 (citing *Almeida*, 341 F.3d at 1323. "However, an attorney who learns confidential or privileged information as a result of a JDA has a duty to maintain the confidentiality of such information, even after the JDA is no longer in force." *Id.* (citing *United States v. Gonzalez,* 669 F.3d 974, 982 (9th Cir. 2012)).

The Court denies the Government's request. It is important to note that not "every JDA in every case is so likely to lead to conflicts caused by cooperation between defendants that it is necessary for the Court to intervene and review the precise terms of the JDA at the outset of the litigation." *United States v. Wasson*, No. CR 07-748 MCA, 2008 WL 11451928, at *2 (D.N.M. Feb. 6, 2008) (citation and internal quotations omitted). *Wasson* involved four defendants charged with several violent crimes in aid of racketeering activity. *Id.* at *1. As here, the Government moved for the Court to conduct an *in camera* inspection of any JDA between the defendants and to ensure that it included virtually identical terms that the Government wants in the case at bar. *See id*. In denying the Government's request, the *Wasson* Court made several determinations that are pertinent to this case.

First, the record did not show "a significant lack of cohesive interests among the[] [d]efendants or their counsel." *Id.* at *2 (distinguishing *Stepney* on the ground that it involved 30

defendants and 70-count indictments). Similarly, in the case at hand, there are no record facts indicating a lack of cohesive interests among Defendants that raises the specter of potential for conflicts of interest to arise between them and their counsel.

Second, a party seeking to raise a joint-defense privilege premised on the existence of a JDA would not only have to show the JDA's existence and applicability, but also that "the privilege has not been waived." *Id*. at *3 (quoting *United States v. LeCroy*, 348 F. Supp. 2d 375, 381 (E.D. Pa. 2004) (other citation omitted). While the Government assumes, based on the Ninth Circuit's decision in *United States v. Henke*, 222 F.3d 633 (9th Cir. 2000) (per curiam), that defense counsel will be precluded from cross-examining a potential cooperating codefendant using information from the cooperator through the JDA, other courts have rejected this argument and concluded "that the privilege [is] waived as to statements by a co-defendant who elected to testify as a government witness." *Wasson*, 2008 WL 11451928, at *3; *Almeida*, 341 F.3d at 1326) ("We hold that when each party to a [JDA] is represented by his own attorney, and when communications by one co-defendant are made to the attorneys of other co-defendants, such communications do not get the benefit of the attorney-client privilege in the event that the co-defendant decides to testify on behalf of the government in exchange for a reduced sentence.") Thus, the application of the joint defense privilege is less clear-cut than the Government makes it seem given that federal circuit courts have different views on whether a cooperating codefendant waives the privilege by testifying.

Finally, defense counsel, not the Government, are "in the best position professionally and ethically to determine when a conflict of interest exists or will probably develop in the course of at trial," and so far defense counsel have not represented that such conflicts exist among or

between counsel and their clients. *Id*. (quoting *Holloway*, 435 U.S. at 485) (other citation omitted).

The Court thus finds persuasive the *Wasson* Court's reasoning and holds that it would be premature to conduct an *in camera* review of any JDA. *See id.* (stating that "[w]ithout a more specific factual basis for conducting such review, performing this task at this preliminary juncture could turn out to be an empty gesture that does nothing to prevent or resolve future disputes.") However, the Court's denial of the Government's motion is without prejudice. The Court will entertain a future motion by the parties if there are facts showing actual or potential conflicts of interest among or between counsel and their clients. *See id*. at *4 (permitting same procedure).

**B. Motion *in Limine* Regarding Defense Counselors' Prior Employment and Affiliations**

The Government represents that some of the lawyers on the defense teams are former prosecutors and therefore moves for order "prohibiting the defendants, through their counsel, from mentioning, or putting forth in any manner, in the jury's presence, including the jury selection process, any reference that any defense attorney has any prior affiliation with the United States Government, a United States Attorney's Office or that any defense attorney was formerly a prosecutor," ECF No. 41 at 2, saying that such evidence is excludable under Federal Rule of Evidence 402.

Counsel for Defendant Bobby Greaves filed a response in opposition, saying that he should not be completely precluded from using personal stories in the jury selection process to contextualize the law for prospective jurors. In addition, counsel noted that informing *venire* members about his prior prosecution service enables defense counsel to intelligently use a peremptory strike against panel members harboring prejudicial attitudes towards former

prosecutors. Counsel for Mr. Medeiros joined in the latter argument, saying that he wishes to inform the panel about his prior role as a judge advocate in the United States Marine Corps (JAG) to ensure that members with an anti-military bias are not seated.

In reply, the Government agreed that "any [prospective] juror who is biased against military veterans should not be on the jury … especially since Mr. Medeiros's status as a service-disabled veteran is at the heart of the facts … the jury will have to adjudicate," ECF No. 51, 1. Therefore, the Government said that it would not object to counsel for Mr. Medeiros referring to his prior role as a JAG – or to the federal prosecutor's own prior military service – as way to "root out" anti-military bias. *Id*. But otherwise the Government maintained its opposition to defense team members referencing their prior prosecution service.

Pursuant to the parties' agreement, the Court permits counsel for Mr. Medeiros to inform the panel of his prior service as a JAG since both parties agree that anti-military bias in this case is not trivial. In all other respects, the Government's motion is granted. Rather than informing prospective jurors that some defense counselors are former prosectors and then asking them at voir dire whether they harbor prejudicial views, the better approach is simply to not inform the panel of this unnecessary information at all.

**C. Motion *in Limine* to Exclude Discussion of Possible Penalties**

The Government moves to prohibit Defendants "and/or any witness from asking any question, introducing any evidence, or making any statement or argument that, directly or indirectly, implicates Defendants' potential sentence" of to the jury. ECF No. 42 at 1. Mr. Greaves filed no response to the motion. As for Mr. Medeiros, he responded that he does not anticipate calling witnesses to testify about Mr. Medeiros's potential sentencing range. The motion is granted. It is well-established that a jury has no sentencing role and must reach its

verdict only on the evidence before it. *See U.S. v. Greer*, 620 F.2d 1383, 1384 (10th Cir. 1980) ("the authorities are unequivocal in holding that presenting information to the jury about possible sentencing is prejudicial. Breach of this standard has often been grounds for reversal.")

**IT IS THEREFORE ORDERED that** the Government's "Motion *in Limine* to Exclude Non-Relevant Evidence" **(ECF No. 41)**, "Motion *in Limine* Regarding Possible Penalties**" (ECF No. 42)**, and "Motion for Court to Inspect any Joint Defense Agreement *in Camera*" **(ECF No. 43)** are ruled on as explained herein.

**IT IS SO ORDERED**.

HON. JUDITH C. HERRERA
Senior United States District Judge