UNITED STATES DISTRICT COURT
DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

    Plaintiff,

v.   No. 1:18-cr-01966-JCH

NICK L. MEDEIROS and
BOBBY GREAVES,

    Defendants.

**MEMORANDUM OPINION AND ORDER**

This matter is before the Court on the following three pretrial motions: (i) The United States' Motion *in Limine* and Notice of Intent to Introduce Bad Acts Pursuant to Federal Rule of Evidence 404(b) (ECF No. 87); (ii) Defendants' Opposed Motion to Compel Specific Discovery (ECF No. 93); and (iii) Defendants' Opposed Motion *in Limine*[:] Violations of Civil Statutes Are Not Violations of Criminal Laws (ECF No. 95). After careful consideration of the motions, briefs, and relevant law, the Court grants the Government's motion *in limine*; denies Defendants' discovery motion; and grants in part and denies in part Defendants' motion requesting specific jury instructions.

**I.**     **Background**

Defendants Nick L. Medeiros and his brother-in-law Bobby Greaves are accused of defrauding federal agencies and committing other crimes by abusing the Service-Disabled Veteran-Owned Small Business Program (SDVOSB), which provides federal contracting assistance to service-disabled veterans who own small businesses. In a previous Memorandum

Opinion and Order, the Court summarized the allegations in the superseding indictment as follows.

> To qualify for a SDVOSB contract, a service-disabled veteran must own at least 51% of a small business and the business must be owned and controlled by one or more service-disabled veterans. In 2003, Bobby Greaves and Nancy Greaves formed JSR, Inc., a small construction business, with Nancy owning 51% of the business and Bobby the remaining 49%. The superseding indictment does not say whether Nancy or Bobby are service-disabled veterans. In January 2012, Mr. Medeiros – who is a service-disabled veteran – and Mr. Greaves formed NJM, Inc., also a construction business. Mr. Medeiros owned 51% of the business while Mr. Greaves owned the remaining 49%. NJM and JSR are both headquartered at 8835 Greaves Lane in Schertz, Texas.
>
> Soon after NJM's establishment, the United States Department of Veteran Affairs (VA) denied NJM's application for SDVOSB-status. The VA could not determine if Mr. Medeiros controlled NJM given that Mr. Greaves owned 49% of the business, NJM leased office space from JSR, and Mr. Medeiros previously was a JSR employee. But in October 2012, the VA granted Mr. Medeiros's application for reconsideration and gave SDVOSB-status to NJM. The VA renewed this certification in September 2014. As a result of its SDVOSB-status, from 2012 to 2016 NJM acquired more than $3 million in federal construction contracts with the VA and the United States Department of Defense (DoD).
>
> In obtaining those contracts, Defendants allegedly conspired to "misrepresent[] the relationship between NJM and JSR" and "pass off" JSR employees as NJM employees, and, further, "conceal NJM's ability to provide sufficient employees and supervisors to complete contracts without JSR's assistance." Defendants supposedly submitted contracting documents stating that NJM could perform significant work without using JSR employees or equipment when, in fact, NJM used JSR employees and equipment to perform VA contract work. NJM would also alter JSR employees' resumes to list them as NJM employees and dress them in "NJM" emblazoned work gear. The "overt acts" section of the superseding indictment describes various instances from 2012 – 2016 where one or both Defendants allegedly misrepresented JSR employees as NJM employees to federal contracting officers.

ECF No. 82, 1-2.

Defendants were indicted in 2018. In March 2020, a federal grand jury returned a four-count superseding indictment. Count I charges Defendants with conspiracy to commit fraud, major fraud, and wire fraud against the government, and to make materially false statements and

representations in order to influence a decision of an Executive Branch agency in violation of 18 U.S.C. § 371. Count II alleges that the Defendants committed major fraud against the government by means of false and fraudulent pretenses to obtain a Department of Defense contract valued at $1 million or more in violation of 18 U.S.C. §§ 1031 & 2(a). Counts III-IV allege that on certain dates Defendants made materially false, fictitious, and fraudulent statements and misrepresentations to the government in violation of 18 U.S.C. §§ 1001(a). *See* Superseding Indictment, ECF No. 66.

**II.     The United States' Motion to Admit Evidence Concerning Bank Signature Cards**

In June 2020, the Government filed a motion to admit trial evidence that Mr. Medeiros submitted to the federal government "apparently-forged [bank] signature cards" which gave the impression that he alone "controlled NJM's accounts." ECF No. 87 at 5, 6.

The following facts are taken from a report authored by an investigator for the Air Force's Office of Special Investigations and other evidence submitted into the record by the Government. On January 19, 2012, Mr. Medeiros allegedly uploaded a signature card for Broadway National Bank (Broadway Bank) account X1408 to the Veteran Affairs (VA) vendor information page for NJM. *See* ECF No. 87-1 at 3 (OSI Report). That same signature card was uploaded again with the VA on July 2, 2014 and it also submitted to the VA on September 24, 2015. *Id.* Mr. Medeiros also submitted the signature card to a different federal agency, the Small Business Administration (SBA), on July 14, 2014. *Id*. The signature card apparently showed Mr. Medeiros as the only authorized signer for the account. *Id*.

In response to a grand jury subpoena, in May 2020, Broadway Bank produced "all the signature cards [it] had on file for NJM[.]" ECF No. 87 at 2; *see also* OSI Report at 4. The bank had no signature card on file with Mr. Medeiros as the only authorized signer. *Id*. Rather, the

3

bank records showed that NJM's signature card listed three authorized signers: Medeiros, Defendant Bobby Greaves, and Rita Jordan, who is Mr. Greaves' sister and the accountant for Mr. Greaves' company, JSR, Inc. ECF No. 87 at 2.

The bank also produced records showing that Mr. Greaves and Ms. Jordan were removed as signatories on the account in January and February of 2018, *see* ECF No. 87-1 at 15, 16. This was shortly after the United States Attorneys' Office sent Mr. Medeiros a January 2018 "target letter." That pre-prosecution letter told Mr. Medeiros, "it is suspected that you falsely claimed your Service Disabled Veteran Owned Small Business would be doing work that was actually done by JSR, Inc., which is not a Service Disabled Veteran Owned Small Business." ECF No. 87-2, 1.

After the bank produced these records the Government moved to admit them. The Government believes that "[o]ne might infer … that Mederios [sic] presented apparently-forged signature cards to the government in 2012 and 2014 to persuade the government (falsely) that only he had signing authority for NJM, Inc. accounts, whereas in reality the true signature card on file with Broadway Bank showed that he, Bobby Greaves of JSR, Inc., and Rita Jordan of JSR, Inc. all had that signing authority in those years, and up to 2018." ECF No. 87 at 2-3. The Government argues that the evidence is admissible to establish Counts I and II (conspiracy and major fraud) because: (1) the signature cards are "direct evidence" of Mr. Medeiros' "scheme to trick the government into believing" that he alone controlled NJM's accounts; or (2), in the alternative, the evidence is admissible under Federal Rule of Evidence 404(b) as other-act evidence "showing his motive, intent, and lack of mistake to defraud and trick the government as charged." ECF No. 87 at 6. Defendants filed no response.

4

Other-act evidence is intrinsic "when the evidence of the other act and the evidence of the crime charged are inextricably intertwined or both acts are part of a single criminal episode or the other acts were necessary preliminaries to the crime charged." *United States v. Lambert,* 995 F.2d 1006, 1007 (10th Cir. 1993). In other words, "intrinsic evidence is directly connected to the factual circumstances of the crime[.]" *United States v. Parker,* 553 F.3d 1309, 1314 (10th Cir. 2009) (internal quotation marks omitted). When other-acts evidence is intrinsic, it is admissible without regard to Rule 404(b)'s prohibitions. *See United States v. Watson*, 766 F.3d 1219, 1235 (10th Cir. 2014). However, "[s]uch intrinsic 'other act' evidence, although not excluded by 404(b), is still subject to the requirement of Fed. R. Evid. 403 that its probative value is not substantially outweighed by the danger of unfair prejudice." *Lambert*, 995 F.2d at 1007–08 (10th Cir. 1993) (citation omitted).

Evidence must me relevant to be admissible. Relevant evidence is that which "has any tendency to make a fact more or less probable than it would be without the evidence;" Fed. R. Evid. 401(a), and "the fact is of consequence in determining the action." *Id*. 401(b). Irrelevant evidence is inadmissible. Fed. R. Evid. 402. The proponent of the evidence must establish its relevancy by a preponderance of the evidence. *Bourjaily v. United States*, 483 U.S. 171, 175-76 (1987) (holding that preliminary questions of admissibility under Fed. R. Evid. 104(a) are governed by a preponderance of the evidence standard).

Given that Defendants failed to respond with a contrasting interpretation of the bank records, the Court concludes that the Government has proven by a preponderance of the evidence that the bank cards and accompanying testimony are admissible intrinsic evidence. To prove major fraud under 18 U.S.C. § 1031, the Government must show: (1) the Defendants knowingly and with the intent to defraud the Government or to obtain money or property by means of

materially false or fraudulent pretenses, representations, or promises; (2) executed or attempted to execute a scheme with the intent to defraud the Government; (3) the scheme took place as a part of acquiring services as a contractor with the Government on a prime contract with the Government; and (4) the value of the contract was $1,000,000 or more. A rational factfinder could conclude that the records evince a "joint plan between [Defendants]" to allegedly "trick the federal government into believing that Medeiros controlled the day-to-day operations of NJM, Inc. and could operate NJM, Inc. and perform the contracts it obtained without significant assistance from Bobby Greaves and his company JSR, Inc." ECF No. 87 at 5. In addition, the evidence is relevant given the bank cards were allegedly furnished to federal agencies during the period of the charged conspiracy, thereby probing whether the Defendants knew of the conspiracy's objectives and voluntarily participated in them. *See United States v. Brooks*, 736 F.3d 921, 940 (10th Cir. 2013) (proof of conspiracy requires a showing that the defendants entered into an agreement to violate the law, knew the objectives of the conspiracy, and knowingly and voluntarily participated in it.); *United States v. Johnson*, 42 F.3d 1312, 1316 (10th Cir. 1994) (testimonial evidence about defendant's wrongdoing during the time frame of the conspiracy was intrinsic evidence and could be considered "part of the scheme for which defendant [was] being prosecuted." (citation and internal quotation marks omitted)).

The Court next analyzes whether the signature card evidence should be excluded pursuant to Rule 403. *See Lambert,* 995 F.2d at 1007–08. Rule 403 permits a court to exclude relevant evidence "if its probative value is substantially outweighed by a danger of … unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403. "To be inadmissible under rule 403, evidence must do more than damage the Defendant's position at trial, it must make a conviction

more likely because it provokes an emotional response in the jury or otherwise tends to affect adversely the jury's attitude toward the defendant wholly apart from its judgment as to his guilt or innocense [*sic*] of the crime charged." *United States v. Burgess,* 576 F.3d 1078, 1099 (10th Cir. 2009) (quotations omitted). The Tenth Circuit "*favors* admission of all relevant evidence not otherwise proscribed; thus, exclusion under this rule is an extraordinary remedy [that] should be used sparingly." *Watson*, 766 F.3d at 1241 (emphasis in original) (citations and internal quotation marks omitted). In conducting the Rule 403 balancing test, the district court considers "(1) whether the evidence was relevant, (2) whether it had the potential to *unfairly* prejudice the defendant, and (3) whether its probative value was substantially outweighed by the danger of unfair prejudice." *Id*. (emphasis in original).

Here, the evidence is probative of Mr. Medeiros' conspiracy membership given that it was found during the conspiracy's alleged operation and probative of the Defendants' business relationship with each other. While the evidence could theoretically be prejudicial, Rule 403 only protects a party from unfair prejudice. *See Watson*, 766 F.3d at 1242. In that regard, Defendants never objected to admitting the evidence, so they did not articulate how the evidence would be unfairly prejudicial or how its probative value would be substantially outweighed by the danger of unfair prejudice. The Government may therefore present to the jury documentary and testimonial evidence concerning the bank cards. Given this holding, the Court does not address the Government's alternative rationale that the evidence is admissible under Rule 404(b).

### III.     Defendants' Motion to Compel Discovery

On October 7, 2020, Defendants moved the Court to compel the Government to disclose the following discovery.

First, for each of the eleven government construction contracts that Defendants allegedly obtained by fraud, Defendants have moved for production of: (i) "any and all documents regarding the government's evaluation of any NJM proposal, (technical proposal, price proposal, and past performance proposal) associated with these contracts," (ii) "all memorandums, findings, reports or presentations by the Source Selection Evaluation Board (or similar evaluation team, board or council) regarding the government's decision to award these contracts to NJM," (iii) "the approved source selection strategy or acquisition plan along with the solicitation and amendments for each of the contracts," (iv) "all information used by the contracting officer to determine whether NJM was a responsible contractor," and (v) "all documents related to the contracting officer's decision to refer, or not to refer, NJM to the SBA for a certificate of competency and determination of responsibility … or VA for a status or size protest." ECF No. 93, 2-3.

Second, in August 2020, Defendants were suspended from future contracting jobs with any Executive Branch agency. The notice of suspension apparently identified this criminal proceeding as the basis for the suspension. Defendants move for production of "[t]he present Responsibility Referral from the … [SBA] OIG," which is apparently related to the notice of suspension. *Id*. at 3.

The Government responded that it lacks this information and that it is immaterial. *See* ECF No. 97, 1.

The Court denies the Defendants' motion based on the Government's first argument, that the information sought is not in its possession. The Government must turn over to the Defendants items that are "within the government's possession, custody, or control" and if they are "material to preparing the defense." Fed. R. Crim. P. 16(a)(1)(E)–(E)(i). However, "the government does

8

not have a duty to disclose items it does not possess." *United States v. Sarras*, 575 F.3d 1191, 1215 (11th Cir. 2009) (citation omitted). "Nor does it have a duty to obtain evidence it does not possess." *Id.* (citation omitted). The Government's response brief details the steps it has taken to produce discovery so far, including making available for inspection "the entire Air Force file on these contracts" and obtaining the help of an Air Force case agent who met with defense counsel at an Air Force base in Tucson, Arizona. ECF No. 97 at 2. The Court therefore has no reason to doubt the Government's statement that the materials sought are not in its possession, custody, or control. The motion is denied because the Government is not obligated to produce that which it does not have. The Court does not adjudicate or decide the Government's additional argument that the materials sought are immaterial.

## IV. Defendants' Requested Jury Instruction

The Service-Disabled Veteran-Owned Small Business Program has comprehensive statutes and regulations in place. Should the Government tell the jury that Defendants violated any of these rules, Defendants ask the Court to instruct the jury that "[i]t is improper … to believe that violations of a civil statute or regulation equates to a violation of criminal laws." ECF No. 95 at 1 (citations omitted). Defendants offer a sample instruction and request the instruction to be given "at the time any civil statutes or regulations are introduced into evidence and in the Court's final instructions." *Id.* at 2.

The Government responded that it has no intention of "argu[ing] that Defendants must be guilty of criminal violations because they have apparently committed some sort of regulatory violation." ECF No. 98, 1. The "greater danger," the Government says, is that Defendants will try to tell the jury how they complied with various rules to suggest that they are innocent. *Id.* at 2. Such evidence "would require extensive mini-trials that would take significant time, mislead

the jury, and confuse the issues genuinely to be decided at trial in a way Federal Rule of Evidence 403 strongly discourages," the Government says. *Id*. But if civil statutes and regulations must be mentioned to provide the jury necessary context, the Government does not oppose the format of Defendants' sample instruction.

"Evidence of civil or regulatory violations is admissible so long as 'the evidence is not presented in such a way that the jury's attention is focused on the civil violations rather than the criminal ones." *United States v. Munoz-Franco*, 487 F.3d 25, 65 (1st Cir. 2007) (quoting *United States v. Stefan,* 784 F.2d 1093, 1098 (11th Cir. 1986)). *United States v. Rackley*, 986 F.2d 1357 (10th Cir. 1993), cited by Defendants, illustrates these principles. *Rackley* was a prosecution for bank fraud and misapplication of bank funds. *Id*. at 1359. The district court allowed testimonial evidence that the Office of the Comptroller of the Currency (OCC) had previously brought a civil action against the defendant which resulted in him being banned from banking. *Id.* at 1362. The Tenth Circuit held that the OCC ban evidence was permissible. It was "not presented in such a way that the jury's attention [was] focused on the civil violations" because prosecutors limited their cross-examination to establishing the bare facts of the ban, they did not refer to any specific regulation that was violated, and jurors were not told to deliberate on the ban or civil regulations. *Id*. at 1363-64. Prosecutors touched on the OCC ban "marginally," and only to impeach the defendant regarding his "professed adherence to sound banking principles" – not to "establish that [he] had committed criminal violations. *Id*. at 1364.

Applying these principles, the parties may refer to violations of a civil statute or regulation. However, such evidence must be introduced to help the jury understand the statutory or regulatory context for Defendants' actions and may not be introduced to establish guilt. *See Munoz-Franco*, 487 F.3d 25, 65 (affirming the district court's decision to allow the prosecution

"to introduce evidence that defendants violated certain regulations of the Federal Home Loan Bank to provide context for their actions and to establish their knowledge of the impropriety of their activities.") Should such civil rules be mentioned, both parties correctly recognize that jury instructions would be appropriate. *See id*. at 65–66 ("courts place[ ] emphasis on a jury instruction which ma[kes] clear that civil or regulatory violations d[o] not equate to criminal conduct.") The Court will review the legal correctness of Defendants' proposed instruction later in the proceedings when the Court develops its final jury instructions. Should the Court use such an instruction, it will be delivered once in the final instructions; the Court will not pause and give the instruction every time evidence of a civil law is mentioned, as Defendants request.

**IT IS THEREFORE ORDERED that:**

- The Government's Motion *in Limine* and Notice of Intent to Introduce Bad Acts Pursuant to Federal Rule of Evidence 404(b) **(ECF No. 87)** is **GRANTED**;

- Defendants' Opposed Motion to Compel Specific Discovery **(ECF No. 93)** is **DENIED**;

- Defendants' Opposed Motion *in Limine*[:] Violations of Civil Statutes Are Not Violations of Criminal Laws **(ECF No. 95)** is **GRANTED in part** and **DENIED in part**: the Court will provide the jury Defendants' requested instruction if needed, but the Court will furnish the instruction once in the Court's final instructions.

**IT IS SO ORDERED**.

HONORABLE JUDITH C. HERRERA
Senior United States District Judge