IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

      Plaintiff,

v.     Cr. No. 18-1966-JCH

NICK L. MEDEIROS, and
BOBBY GREAVES,

      Defendants.

## MEMORANDUM OPINION AND ORDER

This matter comes before the Court on Defendants' *Motion for Particulars of Evidence Supporting Conspiracy Count* (ECF No. 226). Defendants contend that particularity is needed to ensure the prosecution does not seek to convict based on the same acquitted conduct. Defendants request the United States identify each false statement and material concealed fact by date, speaker, and recipient, that it intends to rely upon in a second trial. The Government opposes the motion, asserting that the Superseding Indictment gives Defendants sufficient notice of the charges to prepare a defense and that Defendants are seeking evidentiary detail that is not the function of a bill of particulars. The Court, having considered the motion, response, reply, record, and relevant law, concludes that the motion should be granted.

**I.    BACKGROUND**

    **A.  Summary of Allegations of Superseding Indictment**

Nick L. Medeiros and Bobby Greaves are brothers-in-law. (Superseding Indictment ¶ 12, ECF No. 66.) They partially owned NJM, Inc. ("NJM"), a construction business established in

2012. (*Id.* ¶¶ 10-12.) Defendant Medeiros is a service-disabled veteran ("SDV"), and according to the Superseding Indictment, he used that status to gain preferential construction contracts set aside for military veterans under the Service-Disabled Veteran-Owned Small Business Program ("SDVOSB") by giving subcontracting work to another construction business called JSR, Inc. ("JSR"), which is owned by Defendant Bobby Greaves and his wife, Nancy Greaves. (*Id.* ¶¶ 10-16.) As a result of Defendant Medeiros' SDV status, NJM allegedly applied for and received federal government construction contracts between 2012 and 2016 that are reserved for SDVOSBs. (*Id.* ¶ 16.) According to the Superseding Indictment, in obtaining these contracts, Defendants misrepresented the relationship between NJM and JSR to the United States Department of Veterans Affairs ("VA") and the United States Air Force ("USAF"). (*Id.* ¶ 21.) The Government alleged that Defendants submitted documents to the VA and USAF representing that NJM could perform significant portions of the contract work without using JSR employees or equipment, passed off JSR employees as NJM employees, used JSR employees and equipment to perform the VA contract work, and concealed NJM's inability to provide sufficient employees and supervisors to complete contracts without JSR's assistance. (*Id.* ¶¶ 21-22.)

The grand jury charged Defendants with four counts. Proceeding in reverse order, in Count 4, the grand jury charged that on or about August 14, 2014, Defendants "represented to the VA that NJM and JSR do not share facilities, equipment, or employees, knowing then and there that statement to be untrue." (Superseding Indictment 10, ECF No. 66.) Count 3 alleged that on July 18, 2013, Defendants knowingly and willfully represented to the USAF that NJM would provide the project manager, contract administrator, quality control, safety manager, and superintendent for the Drop Zone contract, knowing then and there that statement to be untrue, in violation of 18 U.S.C. § 1001(a). (*Id.* at 10-11.) Count 2 asserted that Defendants committed major fraud against

the government by means of false and fraudulent pretenses to obtain a USAF contract valued at $1 million or more by falsely certifying that NJM met SDVOSB and Small Business Administration ("SBA") standards for independence and veteran control. (*Id.* at 10.)

In Count 1, the United States charged Defendants with conspiracy under 18 U.S.C. § 371 (1) to defraud the United States; (2) to commit major fraud against the United States through a scheme to obtain a contract worth $1,000,000 or more in violation of 18 U.S.C. § 1031; (3) to commit wire fraud in violation of 18 U.S.C. § 1343; and (4) to make materially false statements to the executive branch in violation of 18 U.S.C. § 1001. (*Id.* at 5-6.) As alleged, the essential objective of the conspiracy "was to obtain and maintain valuable SDVOSB contracts from the VA and Department of Defense by misrepresenting the relationship between NJM and JSR, and by representing that particular employees and supervisors were NJM employees who were actually employed and paid by JSR." (*Id.* ¶ 21.) The further objective of the conspiracy was "to conceal NJM's inability to provide sufficient employees and supervisors to complete contracts without JSR's assistance." (*Id.*) The manner and means used to accomplish this objective was by submitting documents representing "that NJM was able to perform significant portions of the contract work without using JSR employees or equipment," but "NJM would actually use JSR employees and equipment to perform the VA contract work," and "would attempt to pass off JSR employees as its own." (*Id.* ¶ 22.)

The Superseding Indictment also alleged nine overt acts committed during the conspiracy, summarized as follows. Overt Act 1 (¶ 23) and Overt Act 6 (¶ 28) concerned Mr. Medeiros and Mr. Greaves making statements in teaming agreements submitted to the Air Force that NJM would be responsible for certain functions and provide employees for certain roles on the contract work for the Weapons Cleaning Room (Overt Act 1) and the Drop Zone/Cyber Café (Overt Act 6). Overt

Acts 2 (¶ 24), 3 (¶ 25), 4 (¶ 26), and 7 (¶ 29) related to Mr. Medeiros representing that JSR employees were actually NJM employees. Overt Act 5 (¶ 27) concerned a statement Mr. Medeiros made to a CVE inspector that NJM had not hired JSR as a subcontractor and had not used JSR employees, with one 6-hour exception. Overt Act 8 (¶ 30) set out August 14, 2014, representations by Defendants in a signed memorandum to the VA that NJM and JSR do not share facilities, equipment, or employees. Finally, Overt Act 9 (¶ 31) consisted of Mr. Medeiros representing to the VA that NJM did specified work on the Drop Zone contract that was actually completed by JSR employees.

### B.  Relevant Procedural History

On March 30, 2020, Defendants moved for a bill of particulars, claiming that the Superseding Indictment lacked the requisite specificity. (Mem. Op. and Order 1, ECF No. 82.) This Court denied the first motion for a bill of particulars after finding that Defendants had sufficient notice of the charges. (*Id.* at 5.) This Court explained that Count 1 "tracks and cites the language of the conspiracy to commit an offense or defraud the United States statute," contains dates for the alleged criminal conduct, identifies the statutes Defendants allegedly conspired to violate, states the objective of the conspiracy, and sets forth three pages of overt acts, each detailing a specific date and conduct. (*Id.* at 5-7.) Moreover, the Court found Defendants received extensive discovery that allowed them to prepare their defense. (*Id.* at 6-7.)

This Court subsequently held a trial in which the jury convicted Defendants of all four counts. Although the Court denied Defendants' initial motion for judgment of acquittal, Defendants filed a renewed motion for judgment of acquittal and a motion for new trial. This Court entered a judgment of acquittal on Counts 2, 3, and 4, and ordered a new trial on Count 1. (Mem. Op. and Order, ECF No. 204.)

The Government appealed the Court's order granting a new trial, but it did not appeal the acquittals. *United States v. Medeiros*, No. 23-2019, 2023 WL 8752921, *1 (10th Cir. Dec. 19, 2023). The Tenth Circuit affirmed, concluding that the Court "did not abuse its discretion in ordering a new trial because the acquittals on the substantive counts sufficiently called into question the weight of the evidence on the conspiracy count." *Id.* As the Tenth Circuit explained: "The overlap between the conspiracy count and the acquittal on the substantive-count acquittals lightened the weight of the evidence on conspiracy. The acquittals also weakened the proof that certain overt acts furthered the conspiracy's objective." *Id.* at *6. The Tenth Circuit determined that all four parts of the charged conspiracy overlapped with the substantive counts: (i) the conspiracy to defraud (first part) encompassed Counts 2, 3, and 4; (ii) the conspiracy to commit major fraud (second part) aligned with Count 2; (iii) the conspiracy to commit wire fraud (third part) relied on Defendants having fraudulently obtained contracts, as alleged in Counts 2, 3, and 4; and (iv) the conspiracy to make materially false statements (fourth part) related to Counts 3 and 4. *Id.* at *6-7. Because the "acquittals called into question the weight of the evidence on every part of the alleged conspiracy count", the Tenth Circuit concluded that this Court did not abuse its discretion in ordering a new trial on Count 1. *Id.* at *7.

Moreover, the Circuit surmised that the "acquittals weakened the evidentiary link between three overt acts and furtherance of the conspiracy's objective." *Id.* at *8. Count 3 concerned the teaming agreement for the Drop Zone Contract, which was essentially the same teaming agreement submitted for the Weapons Cleaning Room Contract. *Id.* at *8. Overt Act 1 was based on representations in the teaming agreement for the Weapons Cleaning Room, while Overt Act 6 alleged that Defendants signed a teaming agreement for the Drop Zone Contract application with the same language. *Id.* Given this Court's conclusion that the evidence was insufficient to prove

5

the teaming agreement statements were false, the Tenth Circuit reasoned that "even if the Government proved that Mr. Medeiros and Mr. Greaves made the statements alleged in Overt Acts 1 and 6, the court's acquittal of Count 3 vitiated the evidentiary basis to find that the overt acts furthered the conspiracy's 'essential objective'—to obtain contracts by misrepresentation." *Id.* Turning to the acquittal on Count 4, which alleged the same "do not share" language as Overt Act 8, the Circuit again determined that "even if the Government proved that Mr. Medeiros and Mr. Greaves made the statement alleged in Overt Act 8, the court's acquittal of Count 4 undermined the evidentiary basis to find that the overt act furthered the conspiracy's "essential objective"—to obtain contracts by misrepresentation." *Id.* at *9. Because the verdict form did not say which overt acts the jury relied upon to convict, the new trial order was reasonable. *Id.* at *10.

Following remand, Defendants have filed a motion to strike certain overt acts and parts of the conspiracy (ECF No. 224) and a motion to suppress evidence (ECF No. 225). Those motions are currently pending. Defendants also moved for a bill of particulars (ECF No. 226). Relying on both Federal Rule of Criminal Procedure 7(f) and Rule 12(b)(4)(B), as well as the Court's inherent authority to ensure the fair and effective administration of justice, Defendants request "the specific falsehoods and concealments listing by date, speaker, and recipient each material fact falsely stated or concealed." (*Id.* at 1.)

In response, the Government asserts that the Superseding Indictment sufficiently apprises Defendants of the charge to satisfy Rule 7(f), relying on the Court's prior Memorandum Opinion and Order (ECF No. 82). (Gov.'s Resp. 3, ECF No. 230.) The Government further argues that a bill of particulars is not a discovery tool, and that in any event, Defendants have notice of the evidence based on what was admitted in the first trial. (*Id.*) As for the requested list of false statements or concealments, the Government argues that it "does not need to provide a list of all

6

the material facts falsely stated or concealed because conspiracy does not require proof that Defendants falsely stated or concealed any material fact." (*Id.*) The United States contends that the stated objectives of the conspiracy, plus the record of the first trial, provides sufficient notice to present a defense. (*Id.* at 3-4.)

　　II.　　LAW

An indictment is required to be "a plain, concise, and definite written statement of the essential facts constituting the offense charged." Fed. R. Crim. P. 7(c)(1). "An indictment is sufficient if it sets forth the elements of the offense charged, puts the defendant on fair notice of the charges against which he must defend, and enables the defendant to assert a double jeopardy defense." *United States v. Todd*, 446 F.3d 1062, 1067 (10th Cir. 2006) (quoting *United States v. Dashney*, 117 F.3d 1197, 1205 (10th Cir. 1997)). "Therefore, where the indictment quotes the language of a statute and includes the date, place, and nature of illegal activity, it need not go further and allege in detail the factual proof that will be relied upon to support the charges." *United States v. Redcorn*, 528 F.3d 727, 733 (10th Cir. 2008) (internal quotation marks omitted) (quoting *United States v. Dunn*, 841 F.2d 1026, 1029 (10th Cir. 1988)).

"The purpose of a bill of particulars is to inform the defendant of the charge against him with sufficient precision to allow him to prepare his defense." *United States v. Levine*, 983 F.2d 165, 166-67 (10th Cir. 1992) (quoting *Dunn*, 841 F.2d at 1029). Emphasizing the distinction between "evidence" and "theory," the Tenth Circuit explained: "Since the defendant is not entitled to know all the *evidence* the government intends to produce, but only the *theory* of the government's case, the district court [does] not abuse its discretion in denying defendant's motion for a bill of particulars where defendant has been served with a sufficient indictment." *Id.* (internal quotation marks omitted; italics in original). A bill of particulars may also be granted if, in the

absence of a more detailed specification, the defendant may be "hampered in seeking the shelter of the Double Jeopardy Clause." *United States v. Sepulveda*, 15 F.3d 1161, 1192-93 (1st Cir. 1993). The district court has discretion whether to grant a motion for a bill of particulars. *Levine*, 983 F.2d at 166.

According to Rule 12(b)(4)(B), a defendant may, in order to have an opportunity to move to suppress evidence under Rule 12(b)(3)(C), request notice of the government's intent to use any evidence that the defendant may be entitled to discover under Rule 16.

### III.  ANALYSIS

As previously ruled by this Court, the Superseding Indictment was sufficient to give Defendants fair notice of the charges in the first trial. Acquittal on three counts, however, changes the contours of the second trial. Defendants filed a separate motion to suppress evidence and argument that would violate double jeopardy (ECF No. 225), as well as a motion to strike conspiracy theories and overt acts under the Double Jeopardy Clause and law of the case (ECF No. 224). To ensure that the evidence and argument in the second trial do not infringe on Defendants' rights protected by the Double Jeopardy Clause, the Court finds that additional specification is needed. Additional detail also serves the fair administration of justice as it will help the Court make the pretrial rulings it needs to avoid the introduction of prejudicial, irrelevant evidence.

In its prior Memorandum Opinion and Order granting a new trial, the Court found that it was error to admit evidence of facts that the Defendants did not disclose where the Government did not establish that there was a legal duty to disclose the same facts to the particular person or entity to which the question was directed. (Mem. Op. and Order 55-56, ECF No. 204.) The Government in its response to the pending motion to suppress cites *United States v. Sharp*, 749

F.3d 1267, 1280 (10th Cir. 2014), for the proposition that when an allegation of fraud is based upon nondisclosure – akin to silence – there can be no fraud absent a duty to speak. But the Government contends that the evidence it plans to admit does not involve pure omissions, but rather the evidence will be representations Defendants made where they omitted information with the intent to defraud. (*See* Gov.'s Resp. 8-11, ECF No. 232.) Because the parties contest the admissibility of certain false statements and concealments, the Court finds good cause to make these determinations pretrial with the benefit of briefing on specific objections. The notice will also assist the Court in analyzing issues involved in the pending motions.

Accordingly, the Court will require the Government to file a notice listing the evidence of concealments and false statements it intends to present in a second trial by date, speaker, and recipient. Additionally, as to each false statement or concealment listed, the Government should note to which part(s) of the conspiracy the false statement or concealment relates. *See Medeiros*, 2023 WL 8752921, at *2, 7 (explaining four parts of conspiracy). Defendants should make any objections related to false statements or concealments identified in the notice within 14 days of receiving the Government's notice. The response and reply should proceed according to the local rules. This process will enable the Court to make pretrial rulings on the evidence and will reduce the objections at trial and the need for multiple bench conferences. Overall, the process will make for a more efficient trial. It will also help avoid the erroneous admission of evidence. *See Dietz v. Bouldin*, 579 U.S. 40, 45-46 (2016) (courts have inherent power to manage their own affairs to achieve orderly and expeditious disposition of cases so long as it is a reasonable response to a specific problem and action does not contradict any express rule or statute); *United States v. W.R. Grace*, 526 F.3d 499, 512 (9th Cir. 2008) (explaining that district courts have discretionary

authority to order pretrial discovery and disclosures under terms and conditions that courts normally use to manage fair and efficient conduct of trials).

**IT IS THEREFORE ORDERED** that Defendants' *Motion for Particulars of Evidence Supporting Conspiracy Count* (**ECF No. 226**) is **GRANTED**. The United States must file a notice listing the specific false statements and concealed facts by date, speaker, and recipient that it seeks to admit in the second trial and noting to which part(s) of the conspiracy the false statement or concealment relates **within 14 days of entry of this Memorandum Opinion and Order**. Defendants must file any objections related to that list within 14 days of receiving the Government's list. Briefing thereafter should follow the deadlines set by the local rules.[1]

_____
**SENIOR UNITED STATES DISTRICT JUDGE**

---

[1] Based on prior representations to the Court, the Court recognizes that there may be potential upcoming scheduling conflicts. A party may file a motion for extension of time if needed.